IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 4:19CR3020 |
| vs. | ORDER |
| LINZY M. SWISHER, | |
| Defendant. | |

Defendant Swisher has moved to suppress all evidence found during the search of her apartment. ([Filing No. 28](#)). Swisher was on parole at the time of the search and was subject to conditions of parole, including a search and seizure condition. Nonetheless, Defendant claims her parole officer's entry and search of her apartment violated the Fourth Amendment.

**STATEMENT OF FACTS**

In lieu of an evidentiary hearing, the parties filed stipulated facts. ([Filing No. 38](#)). The parties agree that if a suppression hearing was held, Swisher's parole officer, Rachele Brown, would testify consistent with her report. ([Filing No. 38, at CM/ECF p. 5-6](#)).

Defendant Swisher was convicted on March 17, 2017, in the District Court of Cherry County, Nebraska, on a charge of possessing methamphetamine with the intent to deliver. She was sentenced to serve three to eight years in prison. ([Filing No. 38, at CM/ECF p. 1](#)).

As of May of 2018, Defendant was incarcerated within the Nebraska Department of Correctional Services. On May 23, 2018, a certificate of parole was

issued which allowed her to be released provided she agreed to conditions of parole and to supervision by a Nebraska parole officer. ([Filing No. 38, at CM/ECF pp. 3-4](#)). The Certificate of Parole included a search and seizure requirement which stated:

> Your parole officer and/or personnel of the Division of Parole Supervision is permitted to conduct routine searches of your person, residence, vehicle or any property under your control, at such times as they deem necessary.

([Filing No. 38, at CM/ECF p. 3](#)). Defendant agreed to comply with the terms of parole on June 8, 2018, including a search and seizure condition. ([Filing No. 38, at CM/ECF pp. 3-4](#)). She was released on parole in June of 2018. ([Filing No. 38, at CM/ECF p. 1](#)).

At approximately 3:00 p.m. on November 19, 2018, Brown and parole officer Oscar Lopez drove to Swisher's residence for an unannounced home visit. ([Filing No. 38, at CM/ECF p. 5-6](#)). After arriving at the residence and before exiting the vehicle, Brown called Swisher and asked what she was doing. Swisher paused, then stated she was at CVS and putting money on her debit card to pay for her vehicle's licensing. Brown suspected this statement was not true because Swisher was unemployed.

Brown directed Swisher to return to her residence so the officer could inspect it. Swisher again paused at length, then asked the officer to come back another time because a friend was fixing Swisher's door. Brown denied this request and stated Swisher must immediately return to the apartment; that the officers were waiting. Swisher agreed to do so.

By now, Brown suspected Swisher was trying to hide something. So, Brown and Lopez exited their vehicle and approached the apartment. In the hallway outside of Swisher's apartment, they smelled the odor of something burning and could hear someone in Swisher's apartment. Brown knocked on the apartment door several

times, and when no one answered, she knocked loudly and announced, "This is parole, you need to open the door." ([Filing No. 38, at CM/ECF p. 5-6](Filing No. 38, at CM/ECF p. 5-6)).

A man opened the door. Brown stated she was there to see Swisher. The man said Swisher was not home, he did not know when she would return, and he was there to fix the door. Brown identified herself as Swisher's parole officer, explaining she had just talked to Swisher on the phone and the officers were going to enter the apartment and wait for Swisher's return.

The officers entered the apartment and noticed the air was very smoky with a strong scent of perfume. When asked to explain the smoke, the man claimed a grinder he was using overheated and started smoking. Upon questioning by Lopez, the male identified himself as Jeffrey Halvorsen, a parolee supervised by another Nebraska parole officer.

As Lopez continued his interview of Halvorsen, Brown began a walkthrough of the apartment. She found a small "shooter" bottle of Jagermeister in the freezer and advised Halverson that the bottle would be confiscated. As Brown approached a closet in the apartment, the closet door flew open. Swisher jumped out and began yelling at Brown. Brown and Lopez asked her why she was in the closet; if there was a back door to the apartment or if Swisher had been hiding in the closet all along.

Even after being reminded of the search condition of her parole, Swisher was agitated, yelling that the officers were not allowed to enter her home and they had no right to search. Brown and Lopez advised Swisher that she would be restrained for the remainder of the apartment search, and they commanded her to put her hands behind her back. Swisher remained agitated and refused to comply. The officers pat-searched Swisher, finding a cell phone in her left front pocket along with some dollar bills and change. In her right pocket, the officers found a set of keys and

a small baggie with a white crystal-like substance. Swisher admitted the baggie contained "meth." ([Filing No. 38, at CM/ECF p. 5-6](#)). Brown contacted her supervisor and the Lincoln Police Department for assistance.

Brown asked Swisher if there was anything else the officer would find in the apartment. Swisher claimed she did not know, explaining people come and go from her apartment. Brown searched a backpack that was on the floor next to the closet. Inside the middle pocket, she found drug paraphernalia, including pipes and baggies.

Lopez had handcuffed Halvorsen, and during Halverson's pat search, Lopez found several needles and a baggie with a pink crystal-like substance. Lopez also saw a leather handbag on the living room floor which contained a water pipe/bong, a pipe/bong made from a pop bottle and containing a pink residue, two plastic containers containing various drug paraphernalia, a digital scale, and a rolled up Ziplock bag. The Ziplock bag contained bundled money and smaller Ziplock bags filled with a pink crystal-like substance. Lopez found a loaded needle in a bathroom drawer.

All substances found in Swisher's apartment were field tested and were positive for methamphetamine/amphetamines. Swisher and Halvorsen were arrested and lodged at the Lancaster County Correctional facility.

**ANALYSIS**

Citing [U.S. v. Knights, 534 U.S. 112 (2001)](#), Swisher argues that even though she signed a search waiver as a condition of release to parole, her parole officer was not permitted to enter and perform a warrantless search of her apartment. She claims a parole officer cannot search a parolee's home unless the parole officer has "reasonable suspicion that the parolee . . . is engaging in criminal activity" or there a

likelihood that criminal conduct is occurring such that intruding on the parolee's significantly diminished privacy interests is considered reasonable." (Filing No. 29, at CM/ECF p. 3). Swisher argues:

> [T]here existed no reasonable suspicion under United States v. Knights for the search by senior parole officers Brown and Ortiz, and therefore the intrusion by them into Swisher's apartment violated the Fourth Amendment of the United States Constitution. Therefore, being "fruit of the poison tree," all subsequent fruits of the unconstitutional search of Swisher's apartment should be suppressed.

(Filing No. 29, at CM/ECF p. 5).

Knights held a warrantless search of a parolee based upon reasonable suspicion was lawful under the Fourth Amendment. See also, Griffin v. Wisconsin, 483 U.S. 868, 873–74 (1987) (holding that a state regulation allowing warrantless searches of a probationer's home upon reasonable suspicion of a probation violation was reasonable under the special needs exception to the warrant and probable cause requirements of the Fourth Amendment); United States v. McCoy, 847 F.3d 601, 605 (8th Cir. 2017) (holding warrantless, random searches as a condition of pretrial release did not violate the Fourth Amendment where the pretrial officer had reasonable suspicion to believe a crime was being committed).

However, the parole officers in Knights had reasonable suspicion that a search of the parolee would uncover evidence of criminal conduct. As such, Knights was not required to, and specifically did not, decide whether reasonable suspicion is necessary before searching the home of a defendant/parolee who signed a search condition for parole. Knights specifically noted:

> We do not decide whether the probation condition so diminished, or completely eliminated, Knights' reasonable expectation of privacy (or constituted consent. . .) that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment. The terms of the probation condition permit such a search, but we need not address

5

the constitutionality of a suspicionless search because the search in this case was supported by reasonable suspicion.

Knights, 534 U.S. at 120 n. 6.

Five years later, in Samson v. California, 547 U.S. 843, 854 (2006), the Court answered the question of whether reasonable suspicion is necessary before searching a parolee who has consented to such searches as a condition of parole. In Samson, a California parolee was released subject to the mandatory condition that any parolee must agree in writing to be subject to search or seizure by a parole officer or other peace officer "with or without a search warrant and with or without cause;" that is, California inmates who opted for parole had to submit to suspicionless searches by a parole officer or other peace officer at any time. In Samson, the parole officer lacked reasonable suspicion to support a search, and the search performed was based solely on the search condition in Samson's parole agreement. During that search, the officer found methamphetamine. Samson moved to suppress this evidence.

Samson denied the Defendant's motion to suppress, explaining "parole is an established variation on imprisonment of convicted criminals," (Samson, 547 U.S. at 850), and parolees "have severely diminished expectations of privacy." (Samson, 547 U.S. at 852). A parolee released on the condition that he or she must "submit to suspicionless searches by a parole officer or other peace officer 'at any time,'" and who is "unambiguously" made aware of the condition, lacks "an expectation of privacy that society would recognize as legitimate." (Samson, 547 U.S. at 852). By contrast, the State has "substantial" and "overwhelming" interests in "supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.'" (Samson, 547 U.S. at 853). The State has "interests in reducing recidivism and thereby promoting reintegration and positive citizenship among" parolees that "warrant privacy intrusions that would not otherwise be tolerated under the Fourth

Amendment." (Samson, 547 U.S. at 853). Moreover, allowing parolee searches only when reasonable suspicion exists would undermine a State's ability to effectively supervise parolees and to protect the public from criminal acts by reoffenders. A reasonable suspicion requirement "would give parolees [a] greater opportunity to anticipate searches and conceal criminality." Samson, 547 U.S. at 854. Samson held that absent any evidence that the officer acted arbitrary, capricious or in a harassing manner, "[t]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." Samson, 547 U.S. at 857. See also, United States v. McFarland, 116 F.3d 316, 318 (8th Cir. 1997) (holding "a parole search is unlawful when it is nothing more than a ruse for a police investigation. . .").

The government's brief opposing Swisher's motion to suppress argues that under Nebraska law, Brown and Lopez were permitted to search Swisher and her residence based on the search condition in her parole agreement—without any showing of reasonable suspicion.[1] If a state officer's search does not violate the Fourth Amendment, evidence derived from that search will not be suppressed in a federal case if the state officer acted in compliance with state law—even if the same conduct performed by a federal officer would violate federal statutes or regulations.[2] United States v. Moore, 956 F.2d 843 (8th Cir.1992) (denying suppression where state officers made a no-knock entry permitted under Nebraska law, but not federal law, to execute a warrant; if the state officer's conduct did not violate the Fourth Amendment, evidence will not be suppressed in federal court merely because federal statutes applicable to federal officers would produce a different result).

---

[1] Defendant's briefing does not address this issue.

[2] The parties have not discussed whether federal parole officers are permitted to search parolees subject to a search condition absent reasonable suspicion. Based on Moore, I need not and do not decide that issue.

7

In State v. Morgan, 206 Neb. 818, 295 N.W.2d 285 (1980), the Nebraska Supreme Court held that "conditions in probation orders requiring the probationer to submit to warrantless searches, to the extent that they contribute to the rehabilitation process and are done in a reasonable manner, are valid and constitutional." Morgan, 206 Neb. at 826–27. In Morgan, as a condition of probation, Morgan agreed to "submit to a search of his person or property at any time by any Law Enforcement Officer, with or without probable cause, for controlled substances."[3] Thereafter, a probation officer searched Morgan's person and room based on the search condition–without factual grounds for doing so.[4] The officer found evidence of illegal drug activity. Morgan moved to suppress this evidence, arguing the search condition was overbroad, vague, unconstitutional and accepted under coercion.

Morgan disagreed, holding "a condition of probation requiring defendants to submit to search and seizure of person or property at any time by a police officer or probation officer without the benefit of a search warrant" is neither constitutionally overbroad nor a violation of a defendant's Fourth Amendment rights. Adopting the reasoning in State v. Montgomery, 115 Ariz. 583, 566 P.2d 1329 (1977), Morgan explained, "Probation is a form of punishment . . ., and the court may require that a defendant comply with numerous conditions of probation when, in the opinion of the court, such conditions aid in the rehabilitation process or prove a reasonable alternative to incarceration as punishment for the crime committed." Morgan, 206 Neb. at 824, 295 N.W.2d at 288 (quoting Montgomery, 115 Ariz. at 584, 566 P.2d at 1330). A condition allowing warrantless searches of a probationer by any police officer at any time "is a restriction upon the defendant's privacy, but this does not make the condition unconstitutional." Id.

---

[3] The search condition in this case is generic, allowing a warrantless search when a parole officer deems it "necessary." The condition is not limited to a search for "controlled substances."

[4] Morgan rejected the trial court's alternative finding that there were "some grounds to search." Morgan, 206 Neb. at 827, 295 N.W.2d at 289.

> While defendant is on probation his expectations of privacy are less than those of other citizens not so categorized. It is not an unreasonable or an unconstitutional limitation upon his right to be free from unreasonable searches and seizures. . . . "(P)ersons conditionally released to society, such as parolees, may have a reduced expectation of privacy, thereby rendering certain instructions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. . . ."

Id. (internal citation omitted).

Morgan further held that "the search of Morgan's premises was a 'consent' search under the authority" of the search provision of his conditions of probation. Morgan, 206 Neb. at 826. But see, Samson, 547 U.S. at 852 n. 3 (declining to consider whether the search provision in California's parole agreement constituted consent). Morgan held that consent to conditions of release—including a search condition—in lieu of prison confinement is a choice and not the product of coercion. "Morgan clearly had the choice of submitting to the conditions and remaining out of prison on probation or serving a prison term in the penal complex." Morgan, 206 Neb. at 825. Nonetheless, Morgan affirmed its prior holding that "the voluntariness of a consent to search is a question of fact to be determined by the totality of the circumstances." Morgan, 206 Neb. at 826. See, State v. Baldon, 829 N.W.2d 785, 802 (Iowa 2013) (holding a parole agreement containing a prospective search provision is insufficient evidence, in and of itself, to establish consent). While noting that search conditions in a probation agreement "should be sparingly imposed and should be reasonably related to the offense for which the defendant was convicted," Morgan, 206 Neb. at 825, 295 N.W.2d at 288), Morgan held the trial court correctly

found "that the consent to search given by Morgan was freely and voluntarily given."[5] Morgan, 206 Neb. at 826, 295 N.W.2d at 289.

Morgan further held that searching the person and property of those on probation for drug-related crimes furthers the interest in rehabilitation.

> To the extent that the possibility of such searches restrains previously convicted drug offenders from further activity in that field, it clearly aids in the rehabilitation process. Were we to flatly prohibit such searches under provisions similar to those contained in the probation order in this case, we would, we believe, unnecessarily impede and hamper law enforcement authorities, as well as the probation process itself. Reasonable searches are necessary and should be permitted in order to determine whether the probationer is abiding by the conditions of the probation, so that those supervising such persons may determine whether the probationer is making progress in rehabilitation efforts, particularly in drug offenses, or whether the probationer has fallen by the wayside and has resumed his or her incursions into the field of drug addiction, drug abuse, and similar activities.

Morgan, 206 Neb. at 826.

While Morgan dealt with conditions of probation, the Nebraska Court of Appeals has applied the reasoning and holding in Morgan to a search condition for release on parole. State v. Davis, 6 Neb. App. 790, 802, 577 N.W.2d 763, 771

---

[5] Morgan does not explain "the totality of circumstances" supporting its conclusion that the defendant consented to the search provision within the parole agreement. Morgan may be stating that a defendant's signature on a probation agreement which includes a search condition supports a per se finding that the consent was freely and voluntarily given. Or it (and the trial court) may have considered additional evidence—not explained in Morgan—regarding the totality of circumstances existing when Swisher signed the agreement.

The undersigned magistrate judge does not currently decide whether, applying Morgan, a parolee's signature on a parole agreement is enough, in and of itself, to prove the parolee consented to warrantless searches absent probable cause or reasonable suspicion. I will make that decision only if necessary, and only after affording the parties an opportunity to present evidence on the issue of whether Swisher knowingly, freely, and voluntarily signed the parole agreement.

(1998) (interpreting the language of the same parole condition at issue in this case). But see, State v. Baldon, 829 N.W.2d 785, 803 (Iowa 2013) (distinguishing search provisions in probation agreements and concluding a search provision contained in a parole agreement does not represent a voluntary grant of consent). Citing Morgan, Davis held that by signing the parole agreement, the parolee consented to the warrantless search of his home. Moreover, the search "fell within the 'special needs' exception to the Fourth Amendment." Davis, 6 Neb. App. at 803, 577 N.W.2d at 771.

Finally, the government argues Brown had reasonable suspicion to believe Swisher was engaged in criminal activity. "Innocent facts, when considered together, can give rise to a reasonable suspicion. This is especially true when we view the totality of the circumstances through the perspective of an experienced law enforcement officer trained in crime detection and acquainted with the behavior of criminals." United States v. Lebrun, 261 F.3d 731, 733 (8th Cir. 2001). Courts consider an officer's experience when assessing whether facts that might otherwise seem innocuous to a lay person are suspicious in the eyes of an experienced officer.

Ultimately, while I certainly applaud the parties' effort to submit Defendant's motion to suppress on stipulated facts, this motion should not be decided on stipulated facts alone. An evidentiary hearing will be scheduled as to the following issues:

1) Whether Swisher knowingly and voluntarily agreed to the search condition in her parole agreement;

2) Why the parole officers deemed it necessary to search Swisher and her apartment on November 19, 2018;

3) Whether the focus of the search conducted by Brown and Lopez was related to Swisher's underlying crime;

4) Whether, considering their experience as parole officers, Brown and/or Lopez had reasonable suspicion to believe Swisher was engaged in criminal activity on November 19, 2018;

5) Whether the November 19, 2018 search, or the search protocol the parole officers applied to Swisher's case (e.g., frequency of searches, time of day, avoidance of holidays, extent of search, conduct during searches, etc.) was conducted in a reasonable manner or whether the officers acted arbitrary, capricious or in a harassing manner.

Accordingly,

IT IS ORDERED that as outlined in the foregoing analysis of unanswered questions, a hearing will be scheduled on Defendant's motion to suppress, (Filing No. 28).

August 12, 2019.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge