IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:19CR3020 |
| vs. | |
| LINZY M. SWISHER, | FINDINGS, RECOMMENDATION AND ORDER |
| Defendant. | |

Defendant Swisher has moved to suppress all evidence found during the search of her apartment. (Filing No. 28). Swisher was on parole at the time of the search and was subject to conditions of parole, including a search and seizure condition. Nonetheless, Defendant claims her parole officer's entry and search of her apartment violated the Fourth Amendment. For the reasons contained herein, the motion to suppress should be denied.

## STATEMENT OF FACTS

In lieu of an evidentiary hearing, the parties filed stipulated facts. (Filing No. 38). The parties agreed that if a suppression hearing was held, Swisher's parole officer, Rachele Brown, would testify consistent with her report. (Filing No. 38, at CM/ECF p. 5-6). The court nonetheless requested an evidentiary hearing, outlining certain topics to be covered during that hearing. (Filing No. 40). The following outlines the relevant facts as presented in the parties' stipulation and the credible testimony presented at the evidentiary hearing.

Defendant Swisher was convicted on March 17, 2017, in the District Court of Cherry County, Nebraska, on a charge of possessing methamphetamine with the

intent to deliver. She was sentenced to serve three to eight years in prison. (Filing No. 38, at CM/ECF p. 1).

As of May of 2018, Defendant was incarcerated within the Nebraska Department of Correctional Services. On May 23, 2018, a certificate of parole was issued which allowed her to be released provided she agreed to conditions of parole and to supervision by a Nebraska parole officer. (Filing No. 38, at CM/ECF pp. 3-4). Swisher's first parole officer, Officer Johnson, prepared Swisher for parole. Candidates for parole review, sign, and initial the parole agreement before their release. The Certificate of Parole included a search and seizure requirement which stated:

> Your parole officer and/or personnel of the Division of Parole Supervision is permitted to conduct routine searches of your person, residence, vehicle or any property under your control, at such times as they deem necessary.

(Filing No. 38, at CM/ECF p. 3). Defendant agreed to comply with the terms of parole on June 8, 2018, including a search and seizure condition. (Filing No. 38, at CM/ECF pp. 3-4). She was released on parole in June of 2018. (Filing No. 38, at CM/ECF p. 1).

Once an individual is paroled and processed out of prison, the parolee, known to the officers as the "client," goes to the parole office for orientation. At orientation, the general conditions are read aloud to the client, as well as any special conditions which are tied to a specific client. The search provision is a general provision and all individuals placed on parole are subject to that condition. Brown was not present when Swisher signed her agreement or when Johnson read the provisions aloud. However, the procedure is the same in all cases, and there are no circumstances in which the agreement would not have been reviewed with a client. The policy described is the current policy and the policies of the parole office have not recently

changed. Parole clients are required to fill out monthly reports. Swisher regularly prepared and submitted her reports, in English.

In or shortly before November 2018, Swisher's parole supervision was transferred to Officer Rochelle Brown. Prior to that transfer, Brown had not visited or searched Swisher's home.

At approximately 3:00 p.m. on November 19, 2018, Brown and parole officer Oscar Lopez drove to Swisher's residence for an unannounced home visit. ([Filing No. 38, at CM/ECF p. 5-6](#)). Brown did not intend to search Swisher's home. Rather, she was planning to do a routine walkthrough to look for any obvious parole violations, see how things were going for Swisher, and identify any concerns. November 19 was not a holiday and the visit occurred during the day.

After parking adjacent to Swisher's apartment, and before exiting the vehicle, Brown called Swisher and asked what she was doing. Swisher paused, then stated she was at CVS and putting money on her debit card to pay for her vehicle's licensing. Brown suspected this statement was not true because Swisher was unemployed, and she suspected that Swisher was attempting to delay the home visit.

Brown directed Swisher to return to her residence so the officer could inspect it. Swisher again paused at length, then asked the officer to come back another time because a friend was fixing Swisher's door. Brown denied this request and stated Swisher must immediately return to the apartment; that the officers were waiting. Swisher agreed to do so.

By now, Brown suspected Swisher was trying to hide something. So, Brown and Lopez exited their vehicle and approached the apartment. In the hallway outside

3

of Swisher's apartment, they smelled the odor of something burning and could hear someone in Swisher's apartment. In Brown's and Lopez' experience, the odor outside of the home had a burning or chemical odor consistent with the smell of burning methamphetamine. The odor further raised the officers' suspicion of unlawful activity, in part because Swisher had been convicted of possession with intent to distribute methamphetamine. Brown knocked on the apartment door several times, and when no one answered, she knocked loudly and announced, "This is parole, you need to open the door." ([Filing No. 38, at CM/ECF p. 5-6](#)).

A man opened the door. Brown stated she was there to see Swisher. The man said Swisher was not home, he did not know when she would return, and he was there to fix the door. Brown identified herself as Swisher's parole officer, explaining she had just talked to Swisher on the phone and the officers were going to enter the apartment and wait for Swisher's return.

The officers entered the apartment and noticed the air was very smoky. The burning odor was stronger, as was the odor of perfume, as if someone was trying to cover up the burning odor. Upon questioning by Lopez, the male identified himself as Jeffrey Halvorsen, a parolee supervised by another Nebraska parole officer. When asked to explain the smoke and smell in the apartment, Halvorsen claimed a grinder he was using to repair the door had overheated and started smoking. But Lopez noticed the tools Halvorsen claimed to be using were not warm to the touch and the officers did not notice any sawdust or other evidence that the tools had been used.

As Lopez continued his interview of Halvorsen, Brown began a walkthrough of the apartment. She found a small "shooter" bottle of Jagermeister in the freezer and advised Halverson that the bottle would be confiscated. As Brown approached a closet in the apartment, the closet door flew open. Swisher jumped out and began

yelling at Brown. Brown and Lopez asked her why she was in the closet; if there was a back door to the apartment or if Swisher had been hiding in the closet all along.

Even after being reminded of the search condition of her parole, Swisher was agitated, yelling that the officers were not allowed to enter her home and they had no right to search. Brown and Lopez advised Swisher that she would be restrained for the remainder of the apartment search, and they commanded her to put her hands behind her back. Swisher remained agitated and refused to comply. The officers pat-searched Swisher, finding a cell phone in her left front pocket along with some dollar bills and change. In her right pocket, the officers found a set of keys and a small baggie with a white crystal-like substance. Swisher admitted the baggie contained "meth." ([Filing No. 38, at CM/ECF p. 5-6](#)). Brown contacted her supervisor and the Lincoln Police Department for assistance.

Brown asked Swisher if there was anything else the officer would find in the apartment. Swisher claimed she did not know, explaining people come and go from her apartment. Brown searched a backpack that was on the floor next to the closet. Inside the middle pocket, she found drug paraphernalia, including pipes and baggies.

Lopez had handcuffed Halvorsen, and during Halverson's pat search, Lopez found several needles and a baggie with a pink crystal-like substance. Lopez also saw a leather handbag on the living room floor which contained a water pipe/bong, a pipe/bong made from a pop bottle and containing a pink residue, two plastic containers containing various drug paraphernalia, a digital scale, and a rolled up Ziplock bag. The Ziplock bag contained bundled money and smaller Ziplock bags filled with a pink crystal-like substance. Lopez found a loaded needle in a bathroom drawer.

All substances found in Swisher's apartment were field tested and were positive for methamphetamine/amphetamines. Swisher and Halvorsen were arrested and lodged at the Lancaster County Correctional facility.

## ANALYSIS

Citing U.S. v. Knights, 534 U.S. 112 (2001), Swisher argues that even though she signed a search waiver as a condition of release to parole, her parole officer was not permitted to enter and perform a warrantless search of her apartment. She claims a parole officer cannot search a parolee's home unless the parole officer has "reasonable suspicion that the parolee . . . is engaging in criminal activity" or "there is enough of a likelihood that criminal conduct is occurring" such that intruding on the parolee's significantly diminished privacy interests is considered reasonable. (Filing No. 29, at CM/ECF p. 3). Swisher argues:

> [T]here existed no reasonable suspicion under United States v. Knights for the search by senior parole officers Brown and Ortiz, and therefore the intrusion by them into Swisher's apartment violated the Fourth Amendment of the United States Constitution. Therefore, being "fruit of the poison tree," all subsequent fruits of the unconstitutional search of Swisher's apartment should be suppressed.

(Filing No. 29, at CM/ECF p. 5). The government argues the search was valid, either because parole officers Brown and Ortiz had reasonable suspicion to believe Swisher was engaged in criminal activity, or because Swisher consented to a warrantless search as a condition of her parole.

1)  Reasonable Suspicion.

Knights held a warrantless search of a parolee based upon reasonable suspicion was lawful under the Fourth Amendment. See also, United States v. McCoy, 847 F.3d 601, 605 (8th Cir. 2017) (holding warrantless, random searches as

6

a condition of pretrial release did not violate the Fourth Amendment where the pretrial officer had reasonable suspicion to believe a crime was being committed).

The government argues Brown had reasonable suspicion to believe Swisher was engaged in criminal activity. "Innocent facts, when considered together, can give rise to a reasonable suspicion. This is especially true when we view the totality of the circumstances through the perspective of an experienced law enforcement officer trained in crime detection and acquainted with the behavior of criminals." United States v. Lebrun, 261 F.3d 731, 733 (8th Cir. 2001). Courts consider an officer's experience when assessing whether facts that might otherwise seem innocuous to a lay person are suspicious in the eyes of an experienced officer.

Here, the officers began to suspect criminal activity when Swisher claimed to be putting money on a debit card at CVS. Brown did not believe this statement because Swisher was unemployed, lacked funds, and CVS is not a location that provides debit card charging services. Brown's suspicion was then increased by Swisher's lengthy pause when told the officers were at her home, and by her attempt to get the home visit re-scheduled. Once the parole officers smelled the burning chemical odor consistent with methamphetamine emanating from Swisher's apartment, they clearly had reasonable suspicion to believe the occupants of Swisher's apartment were engaged in criminal conduct, particularly since they had to knock more than once before Halvorsen would answer the door. Having reasonable suspicion to believe evidence of criminal activity would be present in Swisher's apartment, Swisher's parole officers did not violate the Fourth Amendment by entering the apartment to conduct a search. Griffin v. Wisconsin, 483 U.S. 868, 873–74 (1987) (holding that a state regulation allowing warrantless searches of a probationer's home upon reasonable suspicion of a probation violation was

reasonable under the special needs exception to the warrant and probable cause requirements of the Fourth Amendment).[1]

    2.    Search as Condition of Parole.

The government also argues that under Nebraska law, Brown and Lopez were permitted to search Swisher and her residence based on the search condition in her parole agreement—without any showing of reasonable suspicion. In Samson v. California, 547 U.S. 843, 854 (2006), the Court answered the question of whether reasonable suspicion is necessary before searching a parolee who has consented to such searches as a condition of parole. In <u>Samson</u>, a California parolee was released subject to the mandatory condition that any parolee must agree in writing to be subject to search or seizure by a parole officer or other peace officer "with or without a search warrant and with or without cause;" that is, California inmates who opted for parole had to submit to suspicionless searches by a parole officer or other peace officer at any time. In <u>Samson</u>, the parole officer lacked reasonable suspicion to support a search, and the search performed was based solely on the search condition in Samson's parole agreement. During that search, the officer found methamphetamine. Samson moved to suppress this evidence.

---

[1] To the extent the defendant may be arguing that the search of her apartment was unduly expansive, the court notes that the officers' suspicion was enhanced, not dispelled, after they entered the apartment. Upon entry, the odor became stronger. Brown and Lopez noted that it was a violation of Swisher's parole to associate with others who are on parole without permission, and the individual in her apartment, Halvorsen, was on parole. During compliance checks, parole officers typically check a client's fridge and freezer for alcohol and the "shooter" found in Swisher's fridge was a violation of her parole agreement. Other factors which increased Brown's and Lopez' suspicion include the fact that Swisher jumped out of a closet, with the size and arrangement of the apartment indicating Swisher had been hiding in the closet since the officers' arrival, she had a baggie of methamphetamine in her pocket, she attempted to distance herself from items found within the apartment by explaining people "come and go all the time," and the officers were able to see drugs or drug paraphernalia in an open leather bag located in the living room. Therefore, after entering the apartment, the officers had reasonable suspicion to fully search the apartment.

8

Samson denied the Defendant's motion to suppress, explaining "parole is an established variation on imprisonment of convicted criminals," (Samson, 547 U.S. at 850), and parolees "have severely diminished expectations of privacy." (Samson, 547 U.S. at 852). A parolee released on the condition that he or she must "submit to suspicionless searches by a parole officer or other peace officer 'at any time,'" and who is "unambiguously" made aware of the condition, lacks "an expectation of privacy that society would recognize as legitimate." (Samson, 547 U.S. at 852). By contrast, the State has "substantial" and "overwhelming" interests in "supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.'" (Samson, 547 U.S. at 853). The State has "interests in reducing recidivism and thereby promoting reintegration and positive citizenship among" parolees, and those interests "warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." (Samson, 547 U.S. at 853). Moreover, allowing parolee searches only when reasonable suspicion exists would undermine a State's ability to effectively supervise parolees and to protect the public from criminal acts by reoffenders. A reasonable suspicion requirement "would give parolees [a] greater opportunity to anticipate searches and conceal criminality." Samson, 547 U.S. at 854. Samson held that absent any evidence that the officer acted arbitrary, capricious or in a harassing manner, "[t]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." Samson, 547 U.S. at 857. See also, United States v. McFarland, 116 F.3d 316, 318 (8th Cir. 1997) (holding "a parole search is unlawful when it is nothing more than a ruse for a police investigation. . .").

If a state officer's search does not violate the Fourth Amendment, evidence derived from that search will not be suppressed in a federal case if the state officer acted in compliance with state law—even if the same conduct performed by a federal officer would violate federal statutes or regulations. United States v. Moore,

9

956 F.2d 843 (8th Cir.1992) (denying suppression where state officers made a no-knock entry permitted under Nebraska law, but not federal law, to execute a warrant; if the state officer's conduct did not violate the Fourth Amendment, evidence will not be suppressed in federal court merely because federal statutes applicable to federal officers would produce a different result).

In State v. Morgan, 206 Neb. 818, 295 N.W.2d 285 (1980), the Nebraska Supreme Court held that "conditions in probation orders requiring the probationer to submit to warrantless searches, to the extent that they contribute to the rehabilitation process and are done in a reasonable manner, are valid and constitutional." Morgan, 206 Neb. at 826–27. In Morgan, as a condition of probation, Morgan agreed to "submit to a search of his person or property at any time by any Law Enforcement Officer, with or without probable cause, for controlled substances."[2] Thereafter, a probation officer searched Morgan's person and room based on the search condition–without factual grounds for doing so.[3] The officer found evidence of illegal drug activity. Morgan moved to suppress this evidence, arguing the search condition was overbroad, vague, unconstitutional and accepted under coercion.

Morgan disagreed, holding "a condition of probation requiring defendants to submit to search and seizure of person or property at any time by a police officer or probation officer without the benefit of a search warrant" is neither constitutionally overbroad nor a violation of a defendant's Fourth Amendment rights. Adopting the reasoning in State v. Montgomery, 115 Ariz. 583, 566 P.2d 1329 (1977), Morgan explained, "Probation is a form of punishment . . ., and the court may require that a defendant comply with numerous conditions of probation when, in the opinion of the

---

[2] The search condition in this case is generic, allowing a warrantless search when a parole officer deems it "necessary." The condition is not limited to a search for "controlled substances."

[3] Morgan rejected the trial court's alternative finding that there were "some grounds to search." Morgan, 206 Neb. at 827, 295 N.W.2d at 289.

court, such conditions aid in the rehabilitation process or prove a reasonable alternative to incarceration as punishment for the crime committed." Morgan, 206 Neb. at 824, 295 N.W.2d at 288 (quoting Montgomery, 115 Ariz. at 584, 566 P.2d at 1330). A condition allowing warrantless searches of a probationer by any police officer at any time "is a restriction upon the defendant's privacy, but this does not make the condition unconstitutional." Id.

> While defendant is on probation his expectations of privacy are less than those of other citizens not so categorized. It is not an unreasonable or an unconstitutional limitation upon his right to be free from unreasonable searches and seizures. . . . "(P)ersons conditionally released to society, such as parolees, may have a reduced expectation of privacy, thereby rendering certain instructions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. . . ."

Id. (internal citation omitted).

Morgan further held that "the search of Morgan's premises was a 'consent' search under the authority" of the search provision of his conditions of probation. Morgan, 206 Neb. at 826. But see, Samson, 547 U.S. at 852 n. 3 (declining to consider whether the search provision in California's parole agreement constituted consent). Morgan held that consent to conditions of release—including a search condition—in lieu of prison confinement is a choice and not the product of coercion. "Morgan clearly had the choice of submitting to the conditions and remaining out of prison on probation or serving a prison term in the penal complex." Morgan, 206 Neb. at 825. Nonetheless, Morgan affirmed its prior holding that "the voluntariness of a consent to search is a question of fact to be determined by the totality of the circumstances." Morgan, 206 Neb. at 826. See, State v. Baldon, 829 N.W.2d 785, 802 (Iowa 2013) (holding a parole agreement containing a prospective search provision is insufficient evidence, in and of itself, to establish consent). While noting that search conditions in a probation agreement "should be sparingly imposed and

should be reasonably related to the offense for which the defendant was convicted," Morgan, 206 Neb. at 825, 295 N.W.2d at 288), Morgan held the trial court correctly found "that the consent to search given by Morgan was freely and voluntarily given." Morgan, 206 Neb. at 826, 295 N.W.2d at 289.

Morgan further held that searching the person and property of those on probation for drug-related crimes furthers the interest in rehabilitation.

> To the extent that the possibility of such searches restrains previously convicted drug offenders from further activity in that field, it clearly aids in the rehabilitation process. Were we to flatly prohibit such searches under provisions similar to those contained in the probation order in this case, we would, we believe, unnecessarily impede and hamper law enforcement authorities, as well as the probation process itself. Reasonable searches are necessary and should be permitted in order to determine whether the probationer is abiding by the conditions of the probation, so that those supervising such persons may determine whether the probationer is making progress in rehabilitation efforts, particularly in drug offenses, or whether the probationer has fallen by the wayside and has resumed his or her incursions into the field of drug addiction, drug abuse, and similar activities.

Morgan, 206 Neb. at 826.

While Morgan dealt with conditions of probation, the Nebraska Court of Appeals has applied the reasoning and holding in Morgan to a search condition for release on parole. State v. Davis, 6 Neb. App. 790, 802, 577 N.W.2d 763, 771 (1998) (interpreting the language of the same parole condition at issue in this case). But see, State v. Baldon, 829 N.W.2d 785, 803 (Iowa 2013) (distinguishing search provisions in probation agreements and concluding a search provision contained in a parole agreement does not represent a voluntary grant of consent). Citing Morgan, Davis held that by signing the parole agreement, the parolee consented to the warrantless search of his home. Moreover, the search "fell within the 'special needs' exception to the Fourth Amendment." Davis, 6 Neb. App. at 803, 577 N.W.2d at 771.

12

The evidence in this case establishes that Swisher knowingly and voluntarily agreed to the search condition in her parole agreement. Swisher would have reviewed, initialed, and signed the agreement prior to her release, and reviewed it again with her parole officer at her parole orientation. Swisher speaks and understands English and has submitted written reports, in English, to the parole office. By signing the parole agreement, Swisher consented to the search. See Davis, supra.

The search itself was not conducted in an arbitrary, capricious or harassing manner. It was not done as a subterfuge for performing a warrantless criminal investigation. On November 19, 2018, the unannounced visit was initiated because Brown was new to Swisher's case and a compliance check was appropriate. Swisher had not been subjected to repeated searches, November 19 was not a holiday, and the visit was intended to be brief, assuming Swisher demonstrated compliance with the terms of her parole.

I therefore find that even absent reasonable suspicion, Swisher knowingly and voluntarily consented to the search of her apartment as a condition of her parole.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 28) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before Richard G. Kopf, Senior United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **October 21, 2019**, or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at the commencement of trial.

September 20, 2019.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge